IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

GRULLON-ROSARIO

Plaintiff

v.                                                    CIVIL NO. 96-2134 (JAG)

COMMONWEALTH OF PUERTO RICO, et al.

Defendant

---

## REPORT AND RECOMMENDATION

On September 20, 1996, Plaintiff Julia Grullón-Rosario (hereinafter "Grullón") brought suit pursuant to 42 U.S.C. §§ 1983, 1995 and 1988 [1], against the Commonwealth of Puerto Rico for declaratory and injunctive relief, and against several police officers[2] and their supervisors[3] for monetary damages. In addition, plaintiff also brings a supplemental claim based on an alleged violation of Article II of the Constitution of the Commonwealth of Puerto Rico and Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31 §§ 5141 and 5142.

Plaintiff Grullón alleges that several officers from the Naguabo police force violated her rights

---

[1]    Section 1983 creates a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States where such deprivation is effected "under color of" state law. 42 U.S.C. § 1983. 42 U.S.C. § 1985 provides a cause of actions for conspiracy to interfere with civil rights, while 42 U.S.C. § 1988 is the attorney fees' provision applicable to §§ 1983 and 1985.

[2]    The police officers named in the complaint are Roberto Vázquez-Montañez (hereinafter "Vázquez"), Edwin Arroyo-Rivera (hereinafter "Arroyo"), Manuel E. Meléndez, (hereinafter "Meléndez"), Rosalinda Pedraza (hereinafter "Pedraza"), and Miguel Conde-Vellón (hereinafter "Vellón").

[3]    Police Superintendent Pedro Toledo (hereinafter "Toledo") is sued in his capacity as supervisor, while Sergeant Pedro J. Sepúlveda-Medina (hereinafter " Sepúlveda") is sued both in his capacity as supervisor, and for his alleged direct involvement with plaintiff.

1   Civil No. 96-2134 (JAG)                    2

2   under the Fourth and Fifth Amendments to the United States Constitution by engaging in "unlawful,

3   intentional, excessive and unreasonable police conduct," and that said misconduct was primarily

4   motivated by the fact that Grullón is from the Dominican Republic. (See Docket No. 1, ¶ 1). Grullón

5   contends that from 1990 through 1996, Naguabo police officers have interfered with her ability to

6   operate her business, by unlawfully searching the premises, harassing her and her customers, and/or

7   continually patrolling the area. (See Docket No. 1, ¶ 2). She further asserts that the aforementioned was

8   done in an attempt to intimidate her and ultimately drive her out of business.

9        Co-defendants have filed  bifurcated motions for summary judgment.   Sgt. Sepúlveda, and

10  officers Vázquez and Arroyo, filed a motion for summary judgment on September 9, 1998 (Docket No.

11  46), which plaintiff  Grullón opposed on November 6, 1998. (Docket No. 59).   Thereafter, the

12  aforementioned co-defendants filed a reply to the plaintiff's response. (Docket No. 73). Plaintiff, in turn,

13  filed her surreply.  (Docket No. 74).

14       Officers Conde, Pedraza, and Superintendent Toledo, filed a separate motion for summary

15  judgment on November 5, 1998.  (Docket No. 56).  Plaintiff responded to this motion on January 28,

16  1999 (Docket No. 68).   The matter was referred for report and recommendation on July 3, 2001.

17  (Docket No. 92).

18                         **SUMMARY JUDGMENT**

19       Rule 56(c), of the Federal Rules of Civil Procedure, sets forth the standard for ruling on

20  summary judgment motions:  The judgment sought shall be rendered forthwith if the pleadings,

21  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

22  that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a

23  matter of law. The critical question is whether a genuine issue of material fact exists.  A genuine issue

24  exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between

25  the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27

26  F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert.

27  denied, 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of the suit under the

28  governing law. Morrisey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995); Maldonado

1   Civil No. 96-2134 (JAG)                    3

2   Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

3         When considering a motion for summary judgment, the court must view all evidence and related

4   inferences in the light most favorable to the nonmoving party.  See Springfield Terminal Ry. v.

5   Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir. 1997).  Nonetheless, the court is free to "ignore

6   'conclusory allegations, improbable inferences and unsupported speculation.'" Súarez v. Pueblo

7   International, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co.,

8   896 F.2d 5, 8 (1st Cir. 1990)).

9         In accordance with the summary judgment standard of review, the relevant facts in the light

10  most favorable to plaintiff Rivera based on the multiple 311.12 statements submitted by the parties are

11  set for the below.  (See Dockets No. 46, 56, 59 and 68).

12

13                        **FACTUAL BACKGROUND**

14        Plaintiff Grullón, who is of Dominican nationality, resides in Naguabo, and owns a business

15  known as July's Place.  (See Docket No. 46, Exhibit I).  It is undisputed that July's Place, a bar-like

16  establishment with all the required permits and licenses, is located in a commercial district, and is

17  surrounded by similar establishments.  Grullón contends that the Naguabo police force has been

18  purposefully interfering with her ability to operate her legally established business since 1990.  (See

19  Docket No. 1, ¶ 14).  She further alleges that these interventions were motivated by discrimination,

20  namely the fact that she was from the Dominican Republic.[4]  The interventions described in the

21  complaint can be divided in three categories: (1) the general allegations of the early 1990's (including

22  the alleged illegal search in 1990, and Grullón's allegedly unfounded arrest in 1991); (2) the incidents

23  occurring in February and March of 1995; and, (3) the incident that occurred on July 26, 1996.

24

25

26  _____

27      [4]     In an effort to support the contention that the actions of the co-defendants were
    motivated by discrimination, plaintiff has brought forth proof that at the Naguabo police precinct the
28  officers referred to her as "la dominincana" and her business was known as "el negocio de la
    dominicana". (See Docket No. 59, Exhibits No. 3XXV, XXVI and XXVII).

1    Civil No. 96-2134 (JAG)                          4

2

3                              *I. The early 1990's*

4         Grullón fails to make any specific reference to the early 1990's incidents in either of the two

5    311.12 statements attached to her motions in opposition to defendants' summary judgment motions.

6    (Dockets No. 59 and 68).  As a result, there is no evidence on the record of what actually happened in

7    1990 and 1991 between plaintiff and the Naguabo police.[5]

8

9                                 *II. 1995*

10        On March 17, 1995, plaintiff Grullón was sponsoring a pool tournament at July's Place.

11   Plaintiff alleges that officers Sepúlveda, Vázquez and Arroyo, arrived at her business at around 10:30

12   pm., and called her out loud by her nationality, saying in Spanish "dominicana sal afuera que queremos

13   hablar contigo". (See Docket No. 59, Exhibits V, VI).

14        Defendants, however, have a differing version of what transpired on March of 1995.

15   Sepúlveda, Arroyo, and Vázquez, contend that on March 17, 1995, they took service at the Naguabo

16   Police precinct at approximately 7:00 pm. (See Docket 46, Exhibit XVII, XVIII and XIX). They further

17   assert that on March 18, 1995, while patrolling, they received a radio call from officer Solís informing

18   them that various anonymous calls had been received at the precinct complaining about noise, loud

19   music, and foul language at July's Place. (See Docket 46, Exhibits XX, XXI and XXII).  There is no

20   written record of these anonymous calls to the precinct; there appears to be no systematic policy at the

21   precinct for recording that type of call.

22        When the officers arrived at July's Place they found various motor vehicles obstructing traffic,

23   people screaming and singing, and loud music coming from the premises.  (See Docket 46, Exhibits

24   XXII and XXIII).  Defendant Sepúlveda asserts that when he requested to speak with plaintiff Grullón

25   _____

26        [5]       Plaintiffs Grullón has failed to include any facts relative to the early 1990 incidents in
27   her 311.12 statement. Thus, in accordance with Local Rule 311.12, this court will not consider the
     alleged incidents of the early 1990's in rendering its decision. See Corrada Betances v. Sea-Land Serv.,
28   Inc., 248 F.3d at 43-44 (1st Cir. 2001); Morales v. Orssleff's EFTE, 246 F.3d 32, 33-35 (1st Cir. 2001);
     Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000)(discussing Local Rule 311.12).

1  Civil No. 96-2134 (JAG)                    5

2  she reacted in a hostile and aggressive manner.  (See Docket No. 46, Exhibit XXIII and XIV).  A

3  complaint was filed against plaintiff Grullón for disorderly conduct, pursuant to Article 109 of the Penal

4  Code of Puerto Rico, P.R. Law Ann. tit. 31 § 4071, and she was summoned to appear at the Naguabo

5  Municipal Court. (Docket No. 46, Exhibits XXVI, XXVII, XXVIII). The case was scheduled for trial

6  given that a Judge at the Municipal Court found probable cause to sustain the charges against plaintiff

7  Grullón. (Docket 46, Exhibit XXVI, XXVII, XXVIII). On December 19, 1995, Grullón was acquitted

8  after a trial. (Docket No. 46, Exhibit XXX).

9        Plaintiff Grullón filed an administrative complaint against co-defendants Sepúlveda, Vázquez,

10  and Arroyo, because she believed that the aforementioned complaint was filed with malicious intent.

11  The defendants, in turn, have brought forth evidence which support the fact that an investigation was

12  conducted and officers Sepúlveda, Vázquez and Arroyo, were exonerated of any wrongdoing. (See

13  Docket No. 56, Exhibit V and VI). In her deposition, plaintiff Grullón testified that she had only filed

14  one administrative complaint during all the years in which the events alleged in the complaint occurred.

15  (See Docket No. 56, Exhibits VII and VIII).

16        The record shows that plaintiff Grullón wrote one letter dated June 2, 1995, to Superintendent

17  Toledo in regard to her encounters with the Naguabo police force.   Defendant Toledo answered said

18  letter and ordered an investigation regarding the incidents alleged in the same. (See Docket No. 56,

19  Exhibits IX and  IV).

20

21                        *III. July 26, 1996*

22        Co-defendants Pedraza and Conde were assigned to the Drug and Vice Division of the Police

23  Department for the Humacao area during July of 1996. (See Docket No. 56, Exhibit I & II).  On July

24  26, 1996, Pedraza and Conde took part in a sting operation carried out by the Drug and Vice Division

25  of the Police Department for the Humacao area in the town of Naguabo against prostitution  which

26  resulted in a series of arrests. (See Docket No.  56 Exhibits, I, II and XIII).

27        Plaintiff Grullón alleges that on said date, co-defendants Conde, Pedraza, and at least three other

28  unnamed officers, entered July's Place and conducted an illegal search of the premises. (Docket No.

1    Civil No. 96-2134 (JAG)                    6

2    68, Exhibit 1, pg. 79-82).   The police officers, who were allegedly dressed in civilian clothes,

3    positioned themselves at the entrance of plaintiff's business armed with rifles, entered her establishment

4    and conducted an illegal search.   Specifically, plaintiff contends that when she identified herself to

5    officer Pedraza as the owner of the establishment, Pedraza informed her that they were there to search

6    the business.  Grullón further asserts that when she asked officer Pedraza if they had a search warrant,

7    Pedraza became upset and proceeded to search the area with the help of officer Conde, and a yet

8    unidentified officer. (Docket No. 68, Exhibit 1).  In summary, plaintiff contends that a warrantless

9    search took place at July' s Place absent probable cause and while all officers were still on duty since

10   they had just conducted a sting operation.

11       During this search, an officer who identified himself as Dávila referred to plaintiff as "tu

12   dominicana ven aca", rather than by name, an allegedly threatened plaintiff with filling charges against

13   her for prostitution.

14

15                                      **ANALYSIS**

16                               *A. Qualified Immunity*

17       "42 U.S.C. § 1983 provides a private rights of action against officials who, while acting under

18   color of state law, deprive individuals of federally assured rights."  Iacobucci v. Boulter, 193 F.3d 14,

19   21 (1st Cir. 1999).  Government officials (such as police officers), "who stand accused of civil rights

20   violations under section 1983 nonetheless can avoid liability for money damages by showing either that

21   they did not violate a right clearly established under federal law or that they acted with objective legal

22   reasonableness." Camilo-Robles v. Hoyos, 151 F.3d 1, 5-6 (1st Cir. 1998)(citing Harlow v. Fitzgerald,

23   457 U.S. 800, 818 (1982)). See also Pray v. City of Sandusky, 49 F.3d 1154, 1157 (1st Cir. 1995).

24

25   A) Sepúlveda, Vázquez and Arroyo

26       A plaintiff who brings forth a section 1983 claim must allege a violation of a clearly established

27   right secured either by the Constitution or by some other federal law.  See  Camilo-Robles v. Hoyos,

28   151 F.3d at 6. In their motion for summary judgment officers Sepúlveda, Vázquez and Arroyo assert

Civil No. 96-2134 (JAG)                                7

that, contrary to plaintiff's allegations, they only interacted with plaintiff on March of 1995[6], as a result

of an anonymous call received at the Naguabo precinct. The aforementioned officers further assert that

Grullón was summoned that night, because they understood she had committed an offense. In fact, a

judge at the Municipal Court found probable cause to sustain the charges against plaintiff even though

she was later acquitted on December 19, 1995. The record is devoid of evidence of an illegal search,

an unjustifiable arrest, the use of excessive force, or any other actionable conduct under section 1983

by officers Sepúlveda, Vázquez, and Arroyo on March of 1995. In other words, plaintiff has failed to

present sufficient proof that the aforementioned officers violated her established constitutional rights.

Even assuming, *arguendo,* that plaintiff's constitutional rights were violated by co-defendants

on March of 1995, the officers still contend that they are entitled to qualified immunity. Officers

Sepúlveda, Vázquez, and Arroyo arrived at July's Place on the night of March 17, 1995 at July's Place

as a result of a radio call. Not only is the record devoid of evidence of actionable behavior under

section 1983 on the part of the police officers, but a judge found probable cause to support the officers'

actions.[7] Therefore, the record clearly shows that co-defendants Sepúlveda, Vázquez, and Arroyo acted

with objective legal reasonableness under the circumstances.

In view of the aforementioned, the Court recommends that co-defendants Sepúlveda, Vázquez,

and Arroyo's motion for summary judgment (Docket No. 46) be **GRANTED** in its entirety, and the

federal claims against them be **DISMISSED**. The facts in the record, viewed in the light most

favorable to plaintiff Grullón, are insufficient to support the claims against co-defendants Sepúlveda,

---

[6]    In her complaint Grullón alleges that on March 17, 1995, co-defendants Sepúlveda, Vázquez, and Arroyo engaged in conduct that violates section 1983. (See Docket No. 1, ¶ 18). However, she fails to specify any other incident involving the aforementioned officers. In her deposition Grullón states, in very general terms, an alleged warrantless search that officers Sepúlveda, Vázquez, and Arroyo conducted in July's Place on February 23, 1995. (See Docket No. 59, Exhibits I). Plaintiff further submits Crucita de Jesús' sworn statement, in which she states that several unnamed police officers conducted a search on July's Place on February 23, 1995. (See Docket No. 59, Exhibit II). Neither of these two documents provide information that would place the aforementioned officers on July's Place on a date other than the evening of March 17 through March 18, 1995.

[7]    On March of 1995, Sepúlveda, Vázquez, and Arroyo did not arrest plaintiff Grullón, but rather summoned her to appear at the Naguabo Municipal Court.

1  Civil No. 96-2134 (JAG)                    8

2  Vázquez, and Arroyo under 42 U.S.C. §§ 1983 and 1985[8]. In addition, this Court recommends that

3  plaintiff's supplemental state law claims against co-defendants Sepúlveda, Vázquez, and Arroyo be

4  **DISMISSED WITHOUT PREJUDICE**.

5

6  **B) Conde and Pedraza**

7        It is undisputed that officers Conde and Pedraza were involved in an incident with plaintiff

8  Grullón on July 26, 1996. Plaintiff Grullón has presented competent evidence in support of her

9  contention that officers Conde and Pedraza conducted an illegal search at July's Place on said date.

10  (See Docket 68, Exhibit 1). Co-defendants Conde and Pedraza assert that they are shielded by qualified

11  immunity. However, in their motion for summary judgment they have failed to support their qualified

12  immunity defense in an appropriate fashion. Whether Conde's and Pedraza's alleged behavior falls

13  "outside the wide band of mistaken police judgments that the qualified immunity is intended to shield"

14  is a genuine question of material fact better suited for a jury. Camilo-Robles v. Hoyos, 151 F.3d at 15.

15        In view of the aforementioned, the Court recommends that the summary judgment motion filed

16  by co-defendants Conde, Pedraza and Toledo (Docket No. 56) be **DENIED** in part. The case shall

17  proceed as to co-defendants Conde and Pedraza in their personal capacities.[9]

18

19

20

21  _____

22        [8]        Plaintiff included in her complaint a claim under 42 U.S.C. § 1985. Nonetheless, the
complaint fails to set forth factual support of the existence of the alleged conspiracy. (See, e.g. Francis-
23  Sobel v. Univ. of Maine, 597 F.2d 15, 17 (1st Cir. 1979). This Court is assuming that plaintiff's
conspiracy claim was based on section 1985(3), given her allegations that the police interfered with her
24  because of her nationality. "A trialworthy section 1985(3) conspiracy claim requires competent
evidence that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus'
25  motivated the alleged conspirators." Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d
26  341 (1st Cir. 1995) (citations omitted). The fact that officers in the Naguabo precinct referred to
plaintiff Grullón as "la dominincana", standing alone, is not enough proof of discrimination for
27  purposes of a section 1985(3) claim.

28        [9]        The monetary claims against the individual co-defendants in their official capacities were
dismissed on March 31, 1999. (Dockets No. 75 and 76).

1    Civil No. 96-2134 (JAG)        9

2               ***B. Supervisory Liability***

3        "Supervisory Liability under § 1983 'cannot be predicated on a respondeat theory, but only on

4 the basis of the supervisor's own acts or omissions.'" Aponte Matos v. Toledo Dávila, 135 F.3d 182,

5 192 (1st Cir. 1998) (citing Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997)). For there to be

6 supervisory liability two factors must be present: (1) subordinate liability, and (2) the supervisor's

7 action or inaction must have been 'affirmatively linked' to the constitutional violation caused by the

8 subordinate. See Aponte Matos v. Toledo Davila, 135 F.3d at 192 (citing Lipsett v. University of

9 Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)).

10        Plaintiff Grullón has failed to produce evidence– through affidavits, discovery responses or the

11 like– in support of her contention that co-defendant supervisors[10] are themselves liable for the officers'

12 alleged misconduct. Section 1983 does not automatically impose liability to supervisors for the

13 misconduct of those under their command. Rather, a "plaintiff must show and 'affirmative link'

14 between the subordinate officer and the supervisor, 'whether through direct participation or through

15 conduct that amounts to condonation or tacit authorization.'" Carmona v. Toledo, 215 F.3d 124, 132

16 (1st Cir. 2000)(citing Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999)); see also, Barreto-

17 Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999).

18        In the record presently before the Court, there is no evidence that co-defendant Toledo failed

19 to adequately train, supervise, investigate, or discipline the offending officers. In fact, Grullón has

20 produced no evidence from which this court (or a jury) could determine that defendant Toledo is liable

21 for officers Conde's and Pedraza's alleged misconduct. All the evidence in the record relative to

22 Toledo's alleged participation is linked to the 1995 incident.[11]

23        In view of the aforementioned the court recommends that the summary judgment motion by co-

24

25       [10]    In her complaint, Grullón states that Sgt. Sepúlveda is sued in his capacity as an officer
26 and a supervisor. However, the record is devoid of evidence of Sgt. Sepulveda's alleged supervisory
27 functions. The Court will review the supervisory liability claim as one pertaining to co-defendant
Superintendent Toledo.

28       [11]    The record shows that plaintiff Grullón wrote a letter dated June 2, 1995, to
Superintendent Toledo, that Toledo answered the same, and ordered an investigation regarding the
alleged 1995 incidents. The record further shows that Grullón filed an administrative complaint relative
to the 1995 incident which resulted in an investigation, and that the named officers were exonerated
after the conclusion of the investigation.

1  Civil No. 96-2134 (JAG)          10

2  defendant Toledo (Docket No. 56) be **GRANTED** in part. The claims against co-defendant Toledo

3  should be **DISMISSED**.

4

5                        **CONCLUSION**

6       In conclusion, the Court  recommends that co-defendants Sepúlveda, Vázquez, and Arroyo's

7  motion for summary judgment (Docket No. 46) be **GRANTED** in its **ENTIRETY**. Wherefore, the

8  federal claims against officers  Sepúlveda, Vázquez, and Arroyo's should be **DISMISSED**, and the

9  supplemental state law claims against them should  be **DISMISSED WITHOUT PREJUDICE**.

10      The Court further recommends that the motion for summary judgment field by co-defendants

11  Conde, Pedraza and Toledo (Docket No. 56) be **GRANTED** in part, and **DENIED** in part. The claims

12  against Superintendent Toledo shall be **DISMISSED**; while the case shall proceed as to co-defendants

13  Conde and Pedraza in the personal capacities.

14      Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects

15  to this report and recommendation must file a written objection thereto with the Clerk of the Court

16  within ten (10) days of the party's receipt of this report and recommendation.  The written objections

17  must specifically identify the portion of the recommendation, or report to which objection is made and

18  the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See

19  Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone,

20  973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch v. Massachusetts Elec., 840 F.2d 985 (1st Cir. 1988);

21  Borden v. Secretary of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702

22  F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor

23  Mart, Inc. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

24      At San Juan, Puerto Rico, this 26th day of July, 2001.

25

26

27                      GUSTAVO A. GELPÍ
                             United States Magistrate Judge

28